UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CIVIL DOCKET No.: 1:17 CV 24714

| | |
|---|---|
| *Teopisto* LAVILLA<br>    Plaintiff, | )<br>)<br>) |
| *versus* | )<br>) |
| *MIAMI DADE COUNTY PARKS,*<br>*RECREATION & OPEN SPACES*, a<br>government agency,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) / |

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff TEOPISTO LAVILLA, ("MR. LAVILLA"), as for his complaint, by and through his undersigned counsel, alleges as follows:

**INTRODUCTION**

1. This is an action to remedy violations of the rights of MR. LAVILLA under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 (ADEA); the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act ("FCRA") to redress injury done to him by the Defendant, MIAMI DADE PARKS, RECREATION, & OPEN.

**JURISDICTION AND VENUE**

2. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331 and § 1343. Plaintiff invokes this Court's supplemental and pendant jurisdiction over Plaintiff's state law

claims because they arise out of the same nucleus of operative facts as the federal matter, and pursuant to 28 U.S.C. § 1332 and § 1367.

3. The venue of this action is properly placed in the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. § 1391(b)(1)-(2), (c)(1)-(2), since the employment practices hereafter alleged to be unlawful were committed in Miami-Dade County, a geographical area found squarely within the Southern District of Florida. Miami Dade County operates out of its principal place of business in the Southern District of Florida.

4. The unlawful employment practices alleged herein were committed in whole or in part in the Southern District of Florida.

## PARTIES

5. Since 2001, the Plaintiff MR. LAVILLA had been employed by MIAMI DADE COUNTY PARKS, RECREATION, & OPEN SPACES ("MDPR" or "Defendant"). MDPR is an "employer" within the meaning of Title VII and the FCRA.

6. Plaintiff served as a Park Security Guard of MDPR from date of hire through 2014, when he was removed from his employment duties by MDPR. At all relevant times herein, MR. LAVILLA was an " employee " of MDPR within the meaning of Title VII and the FCRA. At the time of his employment with MDPR, MR. LAVILLA was a 60-year old man; as such he is a member of a certain protected class of persons.

## PROCEDURAL REQUIREMENTS

7. All conditions precedent to this action have been fulfilled. Plaintiff dual-filed charges of discrimination with the EEOC, and also with the Florida Commission on Human Relations, within 300 days of the alleged violation. The U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") assigned the agencies charge number 510-2014-02332. ***See Exhibit A, EEOC Charge No. 510-2014-02332.*** To date,

over six (6) months have passed since the filing of the charge. On or about September 28, 2017, upon request, the EEOC issued to MR. LAVILLA a Notice of Right to Sue Letter with respect to such charge of discrimination. ***See Exhibit B, EEOC Notice of Right to Sue Letter.*** The Notice of Right to Sue Letter, attached as Exhibit B, was received by undersigned several days after it was issued and mailed by the EEOC.

## STATEMENT OF FACTS

8. MR. LAVILLA began his employment with MDPR on or about 2001, being initially employed as Park Security Guard for Miami Metro Zoo. Subsequently, in 2007, MR. LAVILLA was transferred to Deering Estates of Cutler Bay ("Deering Estate") and worked out of the MDPR office located at 16701 SW 72nd Avenue, Village of Palmetto Bay, 33157 until the day he was terminated ("Deering Employment").

9. MDPR is an agency subdivision of Miami-Dade County, Florida, governed by its rules and chartered under the laws of the state of Florida.

10. Miami Dade County has over 500 employees of which more than 15 are employed under MDPR.

11. One of the employees of MDPR is Jennifer TISTHAMMER ("MS. TISTHAMMER") the Arts & Exhibits Coordinator.

12. At all times relevant, MS. TISTHAMMER was a supervisor for MDPR responsible for the staff at the Deering Estates. MS. TISTHAMMER was the direct supervisor of Paul Vitro ("Mr. Vitro"). Mr. Vitro, in turn, supervised Aldo Vera ("Mr. Vera"). Mr. Vera was the direct supervisor of MR. LAVILLA. Thus MR. LAVILLA answered to three supervisors, each representing MDPR when making statements to him. This was the chain of command.

13. As MR. LAVILLA's most senior supervisor during most of his Deering Employment, MS. TISTHAMMER had the power to make personnel decisions regarding MR. LAVILLA.

14. Throughout the Employment Period, MR. LAVILLA performed his duties for MDPR in a satisfactory fashion. MR. LAVILLA possessed all the required skills, training, and qualifications for the job in question, and performed his duties without significant issue or controversy.

15. MR. LAVILLA's duties during his Deering Employment included providing park guests with security, reporting incidents to his supervisors, perform tasks necessary for the safety and protection of park guests, and identifying and/or warning guests of certain known dangers. If a supervisor requested him to do something, he would do the best he could. When he asked for permission to do something, upon receiving notice he did as his supervisors instructed.

16. During the time MR. LAVILLA was employed by MDPR, Plaintiff was subjected to unlawful acts of discrimination, a victim of harassment based on his age over the span of several months.

17. The unlawful discrimination exhibited by MDPR came at the hands of his supervisor MS. TISTHAMMER and Mr. Vitro.

18. MR. LAVILLA carried out his duties satisfactorily and met all requirements of his job.

19. On or about November 8, 2013, Typhoon Yolanda struck the Philippines, substantially damaging the region and killing thousands of people. The official government disaster relief agencies placed the death toll at 6,340 with over a thousand reported missing but some estimate as many as 15,000 people may have died in that disaster.

20. At all times relevant, MR. LAVILLA had family that lived in the Philippines, including his sister. At all times relevant, MDPR was well informed of these facts.

21. Shortly after the Typhoon struck the island in the Philippines, MR. LAVILLA grew very worried for his family because he did not hear from anyone and did not know what had happened to his sister. The images on the news were stark, and hundreds of people were being reported dead; bodies lining the streets. The days became weeks, which turned to a month and still no word from his family.

22. Having not heard from his family, MR. LAVILLA began asking for time off, to go to the Philippines to try and discover what happened to his family and, if necessary, lay his loved ones to rest.

23. First, MR. LAVILLA asked Mr. Vera. He asked Mr. Vera not less than three times whether he would get approval for a certain period to find his family and help them if possible.

24. Upon information and belief, Mr. Vera promptly discussed the matter with Mr. Vitro who, in turn, discussed the matter with MS. TISTHAMMER conveying MR. LAVILLA's request. No response was given.

25. MR. LAVILLA purchased flights to travel to the Philippines.

26. Having not heard from Mr. Vitro or MS. TISTHAMMER, in order formalize the request, Mr. Vera suggested MR. LAVILLA complete a leave requisition slip and submit it for MDPR review. MR. LAVILLA did as he was instructed to do, he completed the request and timely turned in the request to Mr. Vera who, in turn, promptly submitted the request to Mr. Vitro.

27. The slip was submitted to Mr. Vitro on December 20, 2013. ***See Exhibit C, Leave of Absence Slip.***

28. In his request, MR. LAVILLA asked MDPR in writing for certain time period clearly listed as a leave of absence request. He had verbally explained to MDPR that he wanted to

5

discover the whereabouts of his missing family and, upon discovering their status, secure their safety or, if necessary, properly lay their remains to rest.

29. MR. LAVILLA gave MDPR twenty (20) days of written notice of this request.

30. Prior to the written request, MR. LAVILLA had given MDPR approximately two (2) months notice of MR. LAVILLA's request for leave to help his family in this most trying time.

31. The certain leave period requested was January 9, 2014 through March 19, 2014 with an expected return to work date of March 20, 2014.

32. Given the circumstances described in paragraphs 18 thru 31, MDPR had a duty to promptly approve and/or deny the leave of absence request and notify MR. LAVILLA of its decision before the anticipated date of departure.

33. On January 8, 2014, MR. LAVILLA gathered his possessions and promptly flew to the Philippines to help his sister and family through this devastating time. On January 9, 2014, MR. LAVILLA took his first day of his leave, believing the requested leave to have been authorized.

34. MDPR did not timely notify MR. LAVILLA of its decision regarding his requested leave of absence, only choosing to deny the request after he left.

35. At all times material between November 8, 2013 through March 31, 2014, in light of the circumstances

   a. MR. LAVILLA felt the lack of response from MDPR was not right, and he was in anguish as a result of Mr. Vitro and/or MS. TISTHAMMER not promptly responding with MDPR's decision about MR. LAVILLA's leave request;

   b. Mr. Vera knew it was not right, in fact cruel, for Mr. Vitro and/or MS. TISTHAMMER to not promptly respond with MDPR's decision about MR. LAVILLA's leave request;

    c.  Mr. Vitro knew or should have known the lack of response from MDPR was not right, reckless in fact, or in the alternative it was his purposeful intent to be cruel, when he willfully ignored MR. LAVILLA's leave request and/or withheld MDPR's decision about MR. LAVILLA's leave request from;

    d.  Mr. Vitro knew or should have known the lack of response from MDPR was not right, reckless in fact, or in the alternative it was his purposeful intent to be cruel, when he chose to not promptly respond with MDPR's decision about MR. LAVILLA's leave request;

    e.  MS. TISTHAMMER knew or should have known the lack of response from MDPR was not right, reckless in fact, or in the alternative it was her purposeful intent to be cruel, when she willfully ignored MR. LAVILLA's leave request and/or withheld MDPR's decision about MR. LAVILLA's leave request;

    f.  MS. TISTHAMMER knew or should have known the lack of response from MDPR was not right, reckless in fact, or in the alternative it was her purposeful intent to be cruel, when she chose to not promptly respond with MDPR's decision about MR. LAVILLA's leave request;

    g.  MS. TISTHAMMER knew or should have known the statements she made during MR. LAVILLA's leave demonstrated an unlawful purpose to discriminate; and

    h.  Mr. Vitro and MS. TISTHAMMER knew or should have known the level of cruelty associated with not timely and promptly advising MR. LAVILLA of his leave request, when combined with his termination and the facts alleged in subparagraph a. thru g. of this paragraph, rise to the level of harassment in the workplace.

This knowledge listed in this paragraph subsection a. thru h. was, at all times relevant, imputed upon MDPR.

36. In the alternative to paragraph 34, MR. LAVILLA belief that MDPR authorized his leave was reasonable under the circumstances given that MR. LAVILLA was told by Mr. Vera to go see his sister.

37. During MR. LAVILLA's absence and contemporaneously with his return, Mr. Vera heard MS. TISTHAMMER say several things that were very troubling. For example, during staff meetings, certain statements were made by MS. TISTHAMMER that expressly demonstrate discriminatory intent of MDPR against MR. LAVILLA. MS. TISTHAMMER told Mr. Vera, and certain others present:

   a. "You don't have to ask me what it is I think of the security staff/department. I would put them all in front of a firing squad and I would get rid of them all"; and

   b. To Mr. Vera directly, "You should not keep hiring from a pool of retired employees."

38. Upon returning, MR. LAVILLA was first informed that MDPR's had not approved his leave request.

39. Then Mr. Vera informed MR. LAVILLA of MS. TISTHAMMER's statements and suggested he speak with the EEOC.

40. MR. LAVILLA sought the assistance of the EEOC in order to file a charge against MDPR.

41. MDPR, by and through its agent MS. TISTHAMMER, terminated MR. LAVILLA's employment shortly after his return from the Philippines.

42. MDPR sat on the written request until they knew that MR. LAVILLA had left to the Philippines before choosing to deny MR. LAVILLA's leave request.

43. MR. LAVILLA attempted to resolve these issues with MDPR upon his return to no avail. Pleading for his job back, he found a dispassionate ear as MS. TISTHAMMER's plan to cast out the 60-year-old MR. LAVILLA had reached its conclusion much to her satisfaction.

44. MR. LAVILLA filed his charge with the EEOC.

45. MR. LAVILLA now brings suit in this United States District Court, for the Southern District of Florida.

# COUNT I:
### *UNLAWFUL VIOLATION OF THE ADEA, 29 U.S.C. § 623; DISCRIMINATION BASED ON AGE.*

46. Plaintiff re-adopts each and every allegation as stated in paragraphs 1 through 45 above as if set out in full herein.

47. MDPR employed MR. LAVILLA as a Park Security Guard between 2001 through March of 2014.

48. At all times material, MDPR failed to comply with the ADEA, 29 U.S.C. § 623(a) *et seq.* as amended which states, in relevant part:

> **(a) Employment Practices**
> It shall be unlawful for an employer—
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
> (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a)(1)-(3) (2014).

49. The discrimination of MR. LAVILLA by MDPR was caused by MDPR being aware of MR. LAVILLA's age.

50. At all times relevant, including the time of discrimination, MDPR was aware that Plaintiff was 60 years old.

51. At the time of the unlawful discrimination, MR. LAVILLA did perform and excel at the performance of the essential functions assigned to him by MDPR. MR. LAVILLA was qualified for the position apart from his age.

52. MDPR is a sophisticated employer who has actual knowledge of the requirements of the ADEA, as amended.

53. The failure of MDPR to adhere to the mandates of the ADEA was willful and its violations of the provisions of the ADEA were willful.

54. MDPR, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of MR. LAVILLA's federally protected rights, discriminated against MR. LAVILLA on account of his age in violation of the ADEA with respect to its decision to treat MR. LAVILLA different from other employees.

55. MR. LAVILLA's harassment by MDPR and MR. LAVILLA's subsequent termination from employment was directly and proximately caused by MDPR's unjustified discrimination against MR. LAVILLA because he was 60 years old, in violation of the ADEA.

56. Any alleged nondiscriminatory reason for the termination of MR. LAVILLA's employment asserted by MDPR is a mere pretext for the actual reasons for the termination from employment, MR. LAVILLA's age and complaints related to the unlawful acts of discrimination/harassment.

57. MDPR's actions were malicious and were recklessly indifferent to MR. LAVILLA's rights protecting persons from discrimination due to his age. The discrimination on the basis of age constitutes unlawful discrimination.

58. As a direct and proximate result of MDPR's intentional conduct, MR. LAVILLA has suffered serious economic losses as well as mental pain and suffering.

## **PRAYER FOR RELIEF to COUNT I**

59. WHEREFORE, MR. LAVILLA respectfully requests that this Court order the following:

   a. Enter judgment in favor of MR. LAVILLA and against MDPR for its violations of the ADEA;

   b. Award MR. LAVILLA actual damages suffered, including lost wages, loss of fringe benefits, loss of retirement benefits, and damages;

   c. Award MR. LAVILLA compensatory damages under the ADEA for embarrassment, anxiety, humiliation, and emotional distress MR. LAVILLA has suffered and continues to suffer;

   d. Liquidated damages;

   e. Award MR. LAVILLA prejudgment interest on his damages award;

   f. Award MR. LAVILLA reasonable costs and attorney's fees such as those powers, remedies, and procedures available to prevailing plaintiff pursuant to 29 U.S.C. §§ 626(b) & 216(b) (2014); and

   g. Grant MR. LAVILLA such other and further relief as this Court deems equitable and just.

## COUNT II:
### *RETALIATION IN VIOLATION OF THE ADEA, 29 U.S.C. § 623(D); ANTI-RETALIATION PROVISION.*

60. Plaintiff re-adopts each and every allegation as stated in paragraphs 1 through 45 above as if set out in full herein.

61. MDPR employed MR. LAVILLA as a Park Security Guard between 2001 through March of 2014.

62. At all times material hereto, MDPR failed to comply with the ADEA, 29 U.S.C. § 623(d), which states:

> It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . *has opposed any practice made unlawful by this section* or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d) (2014) (emphasis added).

63. MDPR is a sophisticated employer who has actual knowledge of the requirements of the ADEA, which specifically makes it unlawful to retaliate against employees who oppose or participate in statutorily protected activity.

64. The failure of MDPR to adhere to the mandates of the ADEA was willful and its violations of the provisions of the ADEA were willful.

65. During his Employment Period with MDPR, MR. LAVILLA suffered discrimination and harassment on basis of his age.

66. MR. LAVILLA challenged the decision to terminate him due to his age.

67. MR. LAVILLA began the process of gathering evidence to prepare a charge with the EEOC when he spoke with Mr. Vera and asked for the motives for his termination. Mr. Vera made clear MS. TISTHAMMER's statements which triggered an investigatory and evidence gathering mission required to promptly file a charge.

68. MR. LAVILLA did promptly file a charge.

69. These acts all constituted protected activity under the ADEA, 29 U.S.C. 623.

70. MR. LAVILLA was fired by MDPR and the termination was directly and proximately caused by MR. LAVILLA's complaints about unlawful age discrimination.

12

71. Moreover, MR. LAVILLA's termination came just in temporal proximity after MR LAVILLA participated in protected activity.

72. As a direct and proximate result of MDPR's intentional conduct, MR. LAVILLA suffered serious economic losses as well as mental pain and suffering.

73. Any alleged non-discriminatory reason for terminating MR. LAVILA asserted by MDPR is a mere pretext for the actual reasons for termination, MR. LAVILLA's complaints of discrimination and harassment because of his age.

74. MDPR's actions were malicious and were recklessly indifferent to MR. LAVILLA's rights protecting a person from discrimination due to their age and retaliation due to their complaints of unlawful discrimination. Retaliation on the basis of having engaged in protected activity constitutes unlawful retaliation.

75. As a result of the retaliation, MR. LAVILLA has incurred substantial monetary losses and has suffered emotional distress, embarrassment, and humiliation.

76. MDPR is subject to vicarious liability for the actions of its agents because it failed to take adequate remedial measures to halt the discrimination, harassment, and retaliation to which MR. LAVILLA was subjected to despite MDPR's knowledge that such discrimination, harassment, and retaliation was occurring.

**PRAYER FOR RELIEF to COUNT II**

77. WHEREFORE, MR. LAVILLA respectfully requests that this Court order the following:

    a. Enter judgment in favor of MR. LAVILLA and against MDPR for its violations of the ADEA;

    b. Award MR. LAVILLA actual damages suffered, including lost wages, los of fringe benefits, loss of retirement benefits, and damages;

  c. Award MR. LAVILLA compensatory damages under the ADEA for embarrassment, anxiety, humiliation, and emotional distress MR. LAVILLA has suffered and continues to suffer;

  d. Liquidated damages;

  e. Award MR. LAVILLA prejudgment interest on his damages award;

  f. Award MR. LAVILLA reasonable costs and attorney's fees such as those powers, remedies, and procedures available to prevailing plaintiff pursuant to 29 U.S.C. §§ 626(b) & 216(b) (2014); and

  g. Grant MR. LAVILLA such other and further relief as this Court deems equitable and just.

## COUNT III:
### *VIOLATION OF THE FCRA, CHAPTER 760;*
### *DISCRIMINATION BASED ON AGE*

78. Plaintiff re-adopts each and every allegation as stated in paragraphs 1 through 45 above as if set out in full herein.

79. At all times material hereto, MDPR failed to comply with the FCRA, section 760.10 which states:

> It is an unlawful employment practice for an employer:
> (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . age . . . .

Fla. Stat. 760.10(1)(a) (2014).

80. MDPR's decision to discriminate against MR. LAVILLA was because of his age. Alternatively, MR. LAVILLA's age was a motivating factor that caused MDPR to discriminate against MR. LAVILLA.

81. At all relevant times aforementioned, including the time of discrimination, MDPR was aware that MR. LAVILLA was 60 years old.

82. AT the time of unlawful discrimination, MR. LAVILLA did perform and excel at the performance of the essential functions assigned to him by MDPR.

83. MR. LAVILLA was qualified for the position apart from his age.

84. MR. LAVILLA was discriminated against by his supervisor MS. TISTHAMMER because of his age.

85. MR. LAVILLA was discriminated against by his supervisor Mr. Vitro, because of his age. Alternatively, Mr. Vitro, acting at the direction of MS. TISTHAMMER, discriminated against MR. LAVILLA. Alternatively, Mr. Vitro chose to not prevent, or timely report, MS. TISTHAMMER's discrimination resulting in MR. LAVILLA's harassment, discrimination, and ultimately termination due to his age.

86. MDPR is a sophisticated employer who has actual knowledge of the requirements of the FCRA, chapter 760.

87. The failure of MDPR to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

88. MDPR through its practices and policies as an employer, willfully, and with malicious or reckless disregard of MR. LAVILLA's State Protected Rights, discriminated against MR. LAVILLA because of his age, in violation of the FCRA with respect to its decision to treat MR. LAVILLA different from other employees.

89. MR LAVILLA was wrongfully terminated by MDPR and MR. LAVILLA's termination from employment was directly and proximately caused by MDPR's unjustified discrimination against MR. LAVILLA because of MR. LAVILLA's age.

90. As a direct and proximate result of MDPR's intentional conduct, MR. LAVILLA suffered serious economic losses as well as mental anguish, humiliation, and pain and suffering.

91. Any alleged nondiscriminatory reason for the termination of MR. LAVILLA's employment asserted by MDPR is a mere pretext for the actual reason for the termination from employment, MR. LAVILLA's age and complaints related to the unlawful acts of discrimination and harassment.

92. MDPR's actions were malicious and were recklessly indifferent to MR. LAVILLA's rights protecting a person from discrimination due to his age. Discrimination on the basis of age constitutes unlawful discrimination in violation of the FCRA, Chapter 760.

**PRAYER FOR RELIEF to COUNT III**

93. WHEREFORE, MR. LAVILLA respectfully requests that this Court order the following:

    a. Enter judgment in favor of MR. LAVILLA and against MDPR for its violations of the FCRA;

    b. Award MR. LAVILLA actual damages suffered, including lost wages, los of fringe benefits, loss of retirement benefits, and damages;

    c. Award MR. LAVILLA compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress MR. LAVILLA has suffered and continues to suffer;

    d. Award MR. LAVILLA prejudgment interest on his damages award;

    e. Award MR. LAVILLA punitive damages according to proof;

    f. Award MR. LAVILLA reasonable costs and attorney's fees such as remedies for same available under the FCRA, chapter 760, in a manner consistent with federal case law interpreting Title VII, pursuant to FLA. STAT. § 760.11(5) (2014); and

g. Grant MR. LAVILLA such other and further relief as this Court deems equitable and just.

## COUNT IV:
### *VIOLATION OF THE FCRA, CHAPTER 760; FLORIDA STATUTES: RETALIATION BASED ON AGE DISCRIMINATION*

94. Plaintiff re-adopts each and every allegation as stated in paragraphs 1 through 45 above as if set out in full herein.

95. This is an action against MDPR for unlawful retaliation under the FCRA, Chapter 760, Florida Statutes.

96. The FCRA contains an anti-retaliation provision, forbidding employers from retaliating, or from taking adverse personnel action against, those employees who exercise their lawful and protected rights under the FCRA.

97. The FCRA, Section 760.10(7) reads in applicable part, as follows:

> (7) It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

FLA. STAT. § 760.10(7) (2014).

98. MR. LAVILLA is a member of a protected class under the FCRA because of his age, which was 60 years old at all times relevant, and because of his participation in protected activities within the meaning of the FCRA.

99. MR. LAVILLA, while working for MDPR, was subjected to discrimination and harassment based on age.

100. MR. LAVILLA was discriminated against by MS. TISTHAMMER and Mr. Vitro because he was 60 years old.

17

101. In March 2014, MR. LAVILLA was fired by MDPR, and MR. LAVILLA's firing was directly and proximately caused by MDPR's unjustified discrimination and retaliation against MR. LAVILLA because of his complaints of unlawful discrimination and harassment in violation of state law.

102. During his Employment Period with MDPR, MR. LAVILLA suffered discrimination and harassment on basis of his age.

103. MR. LAVILLA challenged the decision to terminate him due to his age.

104. MR. LAVILLA began the process of gathering evidence to prepare a charge with the EEOC when he spoke with Mr. Vera and asked for the motives for his termination. Mr. Vera made clear MS. TISTHAMMER's statements, which triggered an investigatory, and evidence gathering mission necessary to promptly and timely file a charge.

105. MR. LAVILLA did promptly file a charge.

106. These acts all constituted protected activity under the FCRA, chapter 760.

107. MR. LAVILLA was fired by MDPR and the termination was directly and proximately caused by MR. LAVILLA's complaints about unlawful age discrimination.

108. Moreover, MR. LAVILLA's termination came just in temporal proximity after MR LAVILLA participated in protected activity.

109. As a direct and proximate result of MDPR's intentional conduct, MR. LAVILLA suffered serious economic losses as well as mental pain and suffering.

110. Any alleged nondiscriminatory reason for terminating MR. LAVILLA asserted by Defendant is a mere pretext for the actual reason for termination, MR. LAVILLA's complaints of discrimination and harassment on basis of his age.

111. MDPR's actions were malicious and were recklessly indifferent to MR. LAVILLA's rights protecting a person from discrimination due to their age and retaliation due to their complaints of unlawful discrimination. Retaliation on the basis of having engaged in protected activity constitutes unlawful retaliation.

112. As a result of the retaliation, MR. LAVILLA has incurred substantial monetary losses and has suffered emotional distress, embarrassment, and humiliation.

113. MDPR's acts, through its agents, were done with malice and reckless disregard for MR. LAVILLA's state protected civil rights.

114. MDPR is subject to vicarious liability for the actions of its supervisors and managers because it has failed to take adequate remedial measures to halt the discrimination, harassment, and retaliation to which MR. LAVILLA was subjected to despite MDPR's knowledge that such discrimination, harassment, and retaliation was occurring.

115. As a direct and proximate result of the actions and omissions of MDPR, MR. LAVILLA has suffered injury and losses including a violation of her statutory rights.

**PRAYER FOR RELIEF to COUNT IV**

116. WHEREFORE, MR. LAVILLA respectfully requests that this Court order the following:

    a. Enter judgment in favor of MR. LAVILLA and against MDPR for its violations of the FCRA;

    b. Award MR. LAVILLA actual damages suffered, including lost wages, los of fringe benefits, loss of retirement benefits, and damages;

    c.   Award MR. LAVILLA compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress MR. LAVILLA has suffered and continues to suffer;

    d.   Award MR. LAVILLA prejudgment interest on his damages award;

    e.   Award MR. LAVILLA punitive damages according to proof;

    f.   Award MR. LAVILLA reasonable costs and attorney's fees such as remedies for same available under the FCRA, chapter 760, in a manner consistent with federal case law interpreting Title VII, pursuant to FLA. STAT. § 760.11(5) (2014); and

    g.   Grant MR. LAVILLA such other and further relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

MR. LAVILLA demands a trial by jury of all issues so triable.

*Dated:* December 28, 2017

                                      ***Ramon Guillen, Jr. /s/***
                                      Ramon Guillen, Jr., Fla. Bar. No. 99789
                                      Guillen & Hidalgo, P.A.
                                      2850 S. Douglas Road Suite 303
                                      Coral Gables, FL 33134
                                      Email: ramon@guillenhidalgo.com
                                      Telephone- (305) 444-0600
                                      Fax number- (305) 442-1727

                                      ***Rene Hidalgo /s/***
                                      Rene Hidalgo, Fla. Bar. No. 15354
                                      Guillen & Hidalgo, P.A.
                                      2850 S. Douglas Road Suite 303
                                      Coral Gables, FL 33134
                                      Email: rene@guillenhidalgo.com
                                      Telephone- (305) 444-0600
                                      Fax number- (305) 442-1727